Filed 5/19/25  P. v. Woods CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>CEDRIC WOODS,<br><br>        Defendant and Appellant. | B333862<br><br>(Los Angeles County<br>Super. Ct. No. KA033813) |

APPEAL from an order of the Superior Court of the County of Los Angeles, Juan Carlos Dominguez, Judge.  Reversed and remanded with directions.

Julie Caleca, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Wyatt E. Bloomfield and William H. Shin, Deputy Attorneys General, for Plaintiff and Respondent.

# I.    INTRODUCTION

Defendant Cedric Woods appeals from an order denying his resentencing petition under Penal Code section 1172.6[1], arguing that the trial court erred by refusing to consider testimony presented at the evidentiary hearing and denying the petition based only on the jury's findings in the underlying trial.  We reverse and remand with directions.

# II.    BACKGROUND[2]

On August 16, 1997, the murder victim, 12-year-old D.W. (the victim), and 16-year-old M.H. (the attempted-murder victim) were sitting in Kennedy Park in Pomona with W.I. and another companion.  The attempted-murder victim saw a large four-door maroon car in "'bad shape'" emerge from a nearby housing area.  The front passenger made a gang sign for the Westside Mafia.  The car then turned around, entered the park, and stopped in a parking lot.  When four men exited the car, the attempted-murder victim told the victim to get on his bicycle and leave.  The

---

[1]    All statutory references are to the Penal Code unless otherwise stated.
    Defendant filed his petition pursuant to former section 1170.95 which the Legislature renumbered, with no change in text, as section 1172.6 effective June 30, 2022.  (Stats. 2022, ch. 58, § 10.)  For clarity, we refer to that section as currently numbered throughout this opinion.

[2]    The following is taken from the unpublished opinion in the direct appeal from the judgment of conviction.  (*People v. Woods* (Apr. 8, 1999, B121999) [nonpub. opn.].)

victim rode away, and the attempted-murder victim ran with him. At some point, the attempted-murder victim took control of the bicycle while the victim rode on the handlebars.

The four men returned to the car and followed the two minors. The victim warned that one of the car's doors was open, causing the attempted-murder victim to cross to the opposite side of the street, where he saw the passenger-side door of the car open and heard gunfire as the car came about two feet from the bicycle.

The minors dropped the bicycle and ran down a driveway. The attempted-murder victim saw blood coming from the victim's side and mouth and, when the victim fell, told bystanders across the street to call the police.

Pomona Police Department Officer Brian Bozarth responded to a call of a shooting around 2:50 p.m. and found the two minors, both of whom had gunshot wounds. The victim died from his wounds at the hospital.

The attempted-murder victim told Officer Bozarth that the Westside Mafia was responsible for the shooting. When the officer asked him if he recognized anyone, he replied, "'Thee Dog.'" He also told another officer that Thee Dog was the person with the gun.

Pomona Police Department Detective Greg Guenther interviewed the attempted-murder victim the day after the shooting. He admitted that both he and the victim were members of the Trey57 Sintown Crips and that, after the men in the car made Westside Mafia gang signs, the victim responded with Trey57 signs. He also told the detective that he recognized the right-front passenger as Thee Dog, and he identified Tyrone Hill from a photographic line-up as Thee Dog.

Detective Guenther interviewed the attempted-murder victim again a few days later and showed him a photograph of defendant's car which he confirmed looked like the one involved in the shooting. At trial, however, he was more equivocal about the identifications and descriptions.

About a month after the shooting, Detective Guenther interviewed W.I. who selected a photograph of Tyrone Hill, known to him as Thee Dog, as the right-front passenger in the car that chased his two companions from the park. The detective showed W.I. another set of photographs, and he identified defendant, whom he knew as "'Tiny Dot,'" as the driver of the car. But at trial, W.I. denied making the identifications.

When defendant was interviewed after the shooting, he claimed his car had been parked at his residence the entire day of the shooting with a flat tire. According to defendant, he spent the afternoon at a mall and a park with Hill and another man.

Officer Bozarth testified at trial as an expert on Pomona street gangs. He explained that the shooting took place inside territory claimed by the Trey57 Sintown Crips. Defendant and Hill had previously admitted to Officer Bozarth that they were members of the Westside Mafia. The officer confirmed that Hill's gang name was Thee Dog.

Pomona Police Department Detective Robert Nelson testified that the Westside Mafia Crips were rivals of the Trey57 gang. He explained that making gang signs in a rival gang's territory was a challenge and a gesture of disrespect. Detective Nelson also explained that gang members were generally unwilling or reluctant to cooperate with law enforcement because they preferred to handle matters themselves and because they did not want to be known as "'snitch[es].'"

4

# III. PROCEDURAL BACKGROUND

A. *Convictions and Sentencing*

On March 27, 1998, a jury found defendant guilty of premeditated murder and attempted murder and also found true the allegations that: the murder occurred during a drive-by shooting within the meaning of section 190.2, subdivision (a)(21); both offenses were committed for the benefit of a criminal street gang within the meaning of section 186.22, subdivisions (b)(1) and (b)(4); and a principal was armed with a firearm in the commission of both offenses within the meaning of section 12022, subdivision (a)(1).

On April 15, 1998, the trial court sentenced defendant to life without the possibility of parole for the murder conviction and to a consecutive term of 17 years, comprised of a nine-year term for the attempted murder conviction, two three-year terms for the section 186.22 enhancements, and two one-year terms for the section 12022 enhancements.[3]

B. *Denial of Resentencing and Appeal*

On January 3, 2019, defendant filed his petition for resentencing under section 1172.6. On April 24, 2019, the trial court issued an order denying the petition because defendant was not entitled to relief as a matter of law.

Defendant appealed from the order denying his section 1172.6 petition and, on October 21, 2020, we affirmed the order.

---

[3] On April 8, 1999, the Court of Appeal affirmed the judgment in *People v. Woods, supra*, B121999.

Defendant filed a petition for review in our Supreme Court, and on December 30, 2020, the Supreme Court granted the petition and deferred additional briefing until further order of the court.

On October 5, 2021, the Governor signed Senate Bill No. 775. (Sen. Bill No. 775 (2021–2022 Reg. Sess.), as amended October 5, 2021, p. 3; Stats. 2021, ch. 551, § 1–2 (Senate Bill 775).) The Supreme Court then transferred the matter back to us with directions to vacate our decision and reconsider the cause in light of Senate Bill 775 and *People v. Lewis* (2021) 11 Cal.5th 952.

We vacated our opinion, and defendant and the Attorney General then submitted additional supplemental briefs.[4] On June 24, 2022, we affirmed the trial court's order denying defendant's section 1172.6 petition as to his murder conviction, but reversed as to his attempted murder conviction. We remanded the matter with directions to issue an order to show cause and hold a hearing pursuant to section 1172.6, subdivision (d) only as to the attempted murder conviction on either the instant petition or the new petition filed on or about January 6, 2022, or in the alternative, to consolidate the proceedings on the original petition with the proceedings on the new petition.

---

[4] On or about January 6, 2022, while his appeal was pending, defendant filed a new petition for resentencing pursuant to section 1172.6; and the trial court set a hearing on the petition for March 8, 2022.

6

C.    *Proceedings on Remand*

1.    <u>Evidentiary Hearing</u>

On June 13, 2023, the trial court held an evidentiary hearing on defendant's resentencing petition as to the attempted murder conviction only under section 1172.6, subdivision (d).  At the outset, the prosecutor advised that she would not be calling any witnesses, but asked the court to admit the reporter's and clerk's transcripts from the trial proceedings.

Defendant then testified on his own behalf as follows.  On August 16, 1996, defendant was with Andrea Bryant, the mother of his newborn, at her home in Pomona.  Later that evening, he walked to a location near Mountain View Elementary School and stayed there for a few hours watching "nice cars" pass by.  Defendant then left that location and went to the mall to see a movie, but the theater was not showing any movie he wanted to see, so he went to Mountain View Park where he drank alcohol.

From the park, an acquaintance drove defendant to his aunt Janet Murphy's house.  He stayed at his aunt's house for a while, mowing her lawn.  Around 6:00 p.m., he left his aunt's house and walked a few blocks to Tyrone Hill's house where they smoked marijuana in the front yard.

Fifteen or twenty minutes after defendant arrived at Hill's house, Pomona Police Department officers drove up and began to question Hill about how long the car in the driveway had been parked there.  Defendant told the officers where he had been earlier that day and did not tell them that he drove an individual to Kennedy Park and that the individual shot at two people.

7

During cross-examination, after defendant denied that he owned the maroon vehicle in Hill's driveway, the trial court made the following comment: "I'm just going to interject here. [¶] The jury[ has] already found him guilty beyond a reasonable doubt of the murder of the individual. [W]e're not talking about [natural] and probable consequences, felony murder, anything of that nature. He's saying he knows nothing about this. [¶] . . . [¶] [S]o we're wasting our time here, aren't we?"

Defendant next called his aunt, Mary Louise Murphy, who testified that, on the day of the incident, she went with her sister to defendant's girlfriend's house in Pomona. Sometime before evening, while it was still light outside, she saw defendant at that location.

Following the close of evidence, the trial court engaged in a colloquy with counsel during which it made the following observations: "I don' t think I need to look at a transcript. The jury[ has] already spoken on this issue. And basically the defense here is simply, 'It wasn't me. I wasn't there.' [¶] . . . [¶] [W]hat . . . [defendant] and the family [are] alleging is that [the police] got the wrong guy. And I understand that. But that's not . . . something that you challenge pursuant to [section 1172.6]. [¶] You have to [file a petition for] a writ of habeas corpus or something else based on . . . testimony that wasn't provided at trial. . . . [¶] But at this point, I don't think that I need to go any further in denying the [section 1172.6 petition] with regards to the attempted murder because there has been a jury finding beyond a reasonable doubt of intent to kill. But . . . I don't think I can make that ruling because I have not looked at the transcript. [¶] But do I need to go take that extra step, notwithstanding the fact that a jury already convicted him of attempted murder in

8

which they must find a specific intent to kill.  [¶] . . . [¶]  Well, in the abundance of caution, I'll take a look. . . .  I think that's an important factor in the case, but I will take a look at the transcript.  [T]o just make sure that we've covered all bases . . . ."  The court then continued the matter to August 10, 2023, for a further hearing and decision.

### 2. Further Hearing and Ruling

At the further hearing, the trial court considered the arguments of counsel, admitted the transcripts from the trial proceedings, and denied the petition.  The court began its analysis by explaining that defendant's evidence did not relate to the issues raised by the petition and should have instead been raised in a writ proceeding:  "I just want to say that [defendant's] testimony is valid testimony, and that's something that could be pursued . . . pursuant to . . . a writ of habeas corpus . . . .  [¶]  But your testimony, [defendant], and yours, Ms. Murphy, had no bearing on this issue—on this case here.  Had no bearing.  And I just wanted you to know that . . . I'm not discounting what you had to say, what you said under oath.  Both [Ms. Murphy and defendant] said that it's a wrong person; that it wasn't him; he was getting a haircut and all those things.  But this is not what we're here to decide.  A jury . . . convicted him of . . . the charges that we're here now to deal with.  [¶]  If there's additional evidence . . . you can certainly pursue that.  [¶]  So the reason for me making these statements is not—because I'm going to deny his petition.  . . . I don't want you to take that to mean that you couldn't pursue other avenues."

9

The trial court then explained that, based on its reading of the record, defendant was ineligible for resentencing as a matter of law: "So, on this case, [defendant] was convicted by a jury for the murder of a 12-year-old and an attempted murder of [a] 16-year-old. The jury was instructed with the natural and probable consequences instruction, as well as with CALJIC [No.] 8.66, and the jury was also instructed with CALJIC [No.] 8.67. [¶] Now, [CALJIC No.] 8[.]66 deals with attempted murder and what an attempted murder is—that is a direct but ineffectual attempt to kill an individual—and CALJIC [No.] 8[.]67, that the crime attempted was willful, deliberate, and premeditated and that you must determine whether this allegation is true or not. [¶] I believe, if I'm not incorrect, that the jury found that it was willful, deliberate, and premeditated; is that correct?"

After the prosecutor confirmed that the jury had found defendant guilty of willful, deliberate, and premeditated murder[5], the trial court continued: "That, in and of itself, takes it out of [section] 1172.6. So because the jury found . . . defendant guilty of first-degree murder and attempted premeditated murder, the jury found that . . . defendant acted with a specific premeditated and deliberate intent to kill. . . . That's what the jury found. Therefore, as with his conviction for first-degree murder, he could not have been convicted on a theory of natural and probable consequences but instead on his own mental state, not on an imputed mental state. [¶] So, as such, the court finds that . . .

---

[5]    As we explain further below, although the jury was instructed to determine whether the attempted murder was willful, deliberate, and premeditated, the verdict form returned by the jury did not contain a finding on that allegation.

10

defendant is ineligible for relief under [section 1172.6], as a matter of law."

But the trial court then provided an alternative factual basis for its ruling, explaining:  "However, as a separate and independent ground for denial, the court read the trial transcript, the testimony of [M.H.], the attempted murder victim, and established that defendant drove his vehicle within . . . several feet of the two boys, who were both riding on the same bicycle.  Various shots were fired from a car.  Both boys were hit.  The reason for . . . defendant and his cohorts pursuing the boys was an issue of gang signs.  [¶]  Based on the totality of the circumstances, the court finds beyond a reasonable doubt that [defendant] is guilty of the attempted, premeditated, and deliberate . . . murder of [M.H.]; that he aided and abetted the shooter with the specific intent to kill [M.H.].  [¶]  . . .  [¶]  So, as I indicated, the [prosecution has] met [its] burden of proving beyond a reasonable doubt that this attempted murder was deliberate, premeditated—and [willful.]  [¶]  . . .  [¶]  [A]nd that . . . [defendant] at that time . . . intended to kill these two young folks because of gang issues."

The trial court continued:  "The evidence presented by . . . defendant at the hearing has no bearing on the motion under [section] 1172.6.  [¶]  The court gave no weight to [defendant's] testimony or the testimony of Ms. Murphy.  [¶]  And, as I indicated, the issues raised were important but not relevant to these proceedings so, therefore, once again, the court finds beyond a reasonable doubt that . . . defendant is guilty of the attempted, premeditated, willful, and deliberate attempted murder of [M.H.]. . . .  [¶]  . . .  [¶]  And, therefore, the court denies the [section] 1172.6 petition."

11

Defendant filed a timely notice of appeal from the trial court's order denying his resentencing petition.

## IV.  DISCUSSION

Defendant contends that the trial court erred by denying the petition based on the jury's verdicts and refusing to consider the alibi evidence he presented at trial.  According to defendant, because the court was acting as an independent factfinder at the hearing and new evidence was presented, the court was not bound by the jury's finding that defendant was the driver of the vehicle from which the shooting occurred.

A.  *Legal Principles and Standard of Review*

Section 1172.6, subdivision (a) provides in relevant part: "A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter may file a petition with the court that sentenced the petitioner to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts . . . ."

"At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1,

12

2019.  The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed."  (§ 1172.6, subd. (d)(3).)

We review the superior court's decision to deny the petition after an evidentiary hearing for substantial evidence.  (*People v. Reyes* (2023) 14 Cal.5th 981, 988.)  But we apply de novo review to the issue of whether the trial court misapprehended what the prosecution was required to prove at the evidentiary hearing.  (See *ibid.*)

B.  *Analysis*

The Attorney General does not contend that defendant was the actual shooter.  Thus, in order to demonstrate that defendant was guilty, beyond a reasonable doubt, of attempted murder under the changes to section 188 or 189 made effective January 1, 2019, the prosecution was required to prove that defendant aided and abetted the attempted murder, that is, he acted with an intent to kill, or was a major participant in an underlying felony and acted with reckless indifference to human life.  Whether defendant was present at the time of the shooting is relevant to these issues.  (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1054 ["'Among the factors which may be considered in making the determination of aiding and abetting are:  presence at the scene of the crime, companionship, and conduct before and after the offense"]; *People v. Clark* (2016) 63 Cal.4th 522, 619 [the United States Supreme Court has "stressed the importance

13

of presence to culpability" in determining whether a defendant acted with reckless indifference to human life].) We therefore conclude that the trial court erred by refusing to consider the evidence presented at the hearing on defendant's behalf, on the grounds that the evidence was not relevant. (Evid. Code, § 210 ["'Relevant evidence' means evidence . . . having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action"].)[6]

We next consider the Attorney General's contention that any error was harmless because "[t]he evidence at trial strongly supported a conclusion that [defendant] was indeed the driver of the car when the shooting occurred." A witness, W.I., identified defendant to the police after the shooting as the driver of the maroon car. But, he recanted his testimony at trial, denying that he saw the car on the day of the shooting, denying that he told police that defendant was the driver, and claiming that he had never seen defendant before. If the trial court had considered the

_____

[6] The Attorney General counters that "[b]y virtue of the jury's finding that appellant was guilty of attempted murder as a direct aider and abettor who acted with the specific intent to kill, the issue of whether appellant was correctly identified was already resolved." We disagree with the Attorney General's characterization of the record of conviction. Here, the court instructed the jury that it could find defendant guilty of attempted murder if it was satisfied that "attempted murder [was] a natural and probable consequence of the commission of the crime of shooting from a vehicle at a person." The court also delivered instructions on attempted willful, deliberate, and premeditated murder, but the verdict form did not ask the jury to decide whether the attempted murder was willful, deliberate, and premeditated. Thus, the jury did not necessarily find that defendant acted with an intent to kill.

14

testimony of defendant and Ms. Murphy, found it credible, and weighed it against the prosecution's inconsistent identification testimony, there is a reasonable probability it would not have found beyond a reasonable doubt that defendant was the driver. Accordingly, the error was not harmless.

## V.    DISPOSITION

The order denying defendant's section 1172.6 petition for resentencing on his attempted murder conviction is reversed and remanded with directions to reconsider the petition as an independent fact finder in light of all of the evidence presented at the prior hearing to determine whether the prosecution has proved, beyond a reasonable doubt, that defendant is guilty of attempted murder under current sections 188 and 189.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM (D.), J.

We concur:

HOFFSTADT, P. J.

MOOR, J.

16